# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DENNIS MAYE,**

**Plaintiff,**

v.

**ALBERTO GONZALES, et al.,**

**Defendants.**

**Civil Action No.  00-0271 (JDB)**

## <u>MEMORANDUM OPINION</u>

Plaintiff Dennis Maye brings this action against the Attorney General of the United States under the Equal Employment Opportunity Act, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>. ("Title VII"), and against five individual defendants under 42 U.S.C. § 1985, alleging that he was discriminated against and his constitutional rights were violated as a result of a conspiratorial vendetta to harass him and prevent him from performing his responsibilities as an agent of the Drug Enforcement Administration ("DEA").  On November 15, 2000, the claims against three of the individual defendants were dismissed.  In January 2002, the case was transferred to the undersigned judge, and on November 18, 2002, the Court granted the motion to dismiss filed by the remaining two individual defendants.  <u>See</u> <u>Maye v. Reno</u>, Civil Action No. 00-0271 (D.D.C. Nov. 18, 2002)

(memorandum opinion) ("Maye Mem. Op.").  The Attorney General has now moved for

summary judgment on all counts.  For the reasons discussed below, the Court will grant the

motion.

## BACKGROUND

Plaintiff was employed as a special agent with the DEA beginning in 1989, achieving the

level of GS-12 in January 1997.  Compl. ¶¶ 10-11.  He alleges that beginning in early 1994, two

Assistant United States Attorneys ("AUSAs") in the Washington, D.C. office ("USAO-DC"),

William O'Malley and Daniel Bernstein, initiated an effort to investigate and, thereafter, harass

plaintiff because he had allegedly provided perjured or false testimony in a Superior Court

criminal prosecution.  Id. ¶ 14.  AUSA O'Malley, with AUSA Bernstein's assistance, allegedly

forwarded information within the DEA and the Department of Justice ("DOJ") Public Integrity

Section that resulted in investigations of plaintiff by the DOJ Office of Professional

Responsibility and a grand jury.  See id. ¶¶ 14-18.  Plaintiff was never indicted, and an effort to

have him held in contempt of court was unsuccessful.  Id. ¶¶ 18-22.

A subsequent review by DEA's Board of Professional Conduct and a proposed removal of

plaintiff from federal service resulted, according to plaintiff, in his "exoneration" with respect to

all charges and specifications other than a single specification of dereliction of duty, for which he

received a one week suspension.  Id. ¶¶ 23-24.  Plaintiff's principal allegation is that

notwithstanding his "exoneration," a continuing effort was made to harass him, prevent him from

performing his duties as a DEA Agent, and limit his future job prospects, primarily through

continuing efforts by AUSAs O'Malley and Bernstein.  Plaintiff alleges that after his transfer to

the DEA offices in Baltimore, MD and Northern Virginia, AUSAs O'Malley and Bernstein

proactively contacted officials in the United States Attorneys' Offices for those locations and communicated accusations against plaintiff in an effort to hinder plaintiff's professional opportunities and to tarnish his reputation.  Specifically, plaintiff alleges that AUSAs O'Malley and Bernstein contacted United States Attorney Lynne Battaglia and AUSA Katharine Armentrout in the United States Attorney's Office in Baltimore, MD ("USAO-MD") and AUSA Ledora Knight in the United States Attorney's Office in the Eastern District of Virginia ("USAO-EDVA").  O'Malley, Bernstein, Armentrout, and Battaglia were formerly named as individual defendants in this litigation.

Based upon these allegations, plaintiff asserts several employment discrimination claims against the Attorney General, in an official capacity only, as head of the Department of Justice, of which the DEA and the USAO are components.[1]  Plaintiff contends that:  (1) he has been prevented from performing his duties as a DEA special agent because of the actions of USAO employees (Count I); (2) he has been wrongfully denied a promotion by DEA supervisors, including formerly named defendant Group Supervisor Helen Bass (Count II); and (3) he has suffered an adverse impact on his career as a result of the decisions made by USAO-DC and USAO-MD not to prosecute court cases in which plaintiff is likely to appear as a witness or affiant (Count III).  According to plaintiff, all of the actions complained of were taken because he

---

[1]Although plaintiff is employed by the DEA, portions of his complaint actually challenge the actions of various AUSAs as the basis for the Title VII claims.  Title VII, however, applies to actions taken by a plaintiff's employer.  The DEA and USAO are both subdivisions of the DOJ, but it is worth noting that plaintiff's action technically seeks to hold his employer -- the DEA -- accountable for the actions of another entity -- the USAO-DC.  See Pl.'s Exh. 12 at 2 (Sworn Statement of Dennis Maye).  The Court need not pursue this issue further, however, because there are a number of more serious legal insufficiencies that support summary judgment in the Attorney General's favor.  In any event, the Attorney General would presumably be the proper defendant as to either the DEA or any USAO.

is African-American, and he has further been retaliated against for filing discrimination

complaints with the DEA Equal Employment Office ("EEO").

## LEGAL STANDARD

### I.  Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating that no genuine dispute of material fact exists.  See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by

"informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-moving party's statements as true, and accept

all evidence and make all inferences in the non-moving party's favor.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986).  Nevertheless, a non-moving party must establish more

than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, although

the moving party need only point to the absence of evidence proffered by the non-moving party,

Celotex, 477 U.S. at 322.  Summary judgment is appropriate if the non-moving party fails to

offer "evidence on which the jury could reasonably find for the [non-moving party]."  Anderson,

477 U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## II.  Legal Framework for Title VII Analysis

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is the "seminal case

establishing the burden of proof in employment discrimination cases under Title VII." Miller v.

American Coalition of Citizens with Disabilities, 485 A.2d 186, 189 (D.C. 1984).  Under this

framework, the plaintiff has the burden of establishing a prima facie case of discrimination or

retaliation by a preponderance of the evidence.  McDonnell Douglas, 411 U.S. at 802; see also

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the plaintiff establishes

a prima facie case, the burden then shifts to the employer to articulate a legitimate,

nondiscriminatory or non-retaliatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.

The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at 254-55.  The

employer "need not persuade the court that it was actually motivated by the proffered reasons.  It

is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it

discriminated against the plaintiff."  Id.

If the employer successfully articulates a nondiscriminatory or non-retaliatory basis for its

actions, the burden shifts back to the plaintiff to show that the employer's stated reason was a

pretext for discrimination or retaliation.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 143 (2000).  The plaintiff may attempt to establish that she was the victim of intentional

discrimination "by showing that the employer's proffered explanation is unworthy of credence."

Id. (quoting Burdine, 450 U.S. at 256).  But "[p]roof that the defendant's explanation is unworthy

of credence is simply one form of circumstantial evidence that is probative of intentional

discrimination."  Id. at 147.  Thus, the trier of fact may also "consider the evidence establishing

the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of

whether the defendant's explanation is pretextual.'"  Id.  (quoting Burdine, 450 U.S. at 255 n.10).

As the Reeves Court explained:

> Whether judgment as a matter of law is appropriate in any
> particular case will depend on a number of factors . . . includ[ing]
> the strength of the plaintiff's prima facie case, the probative value
> of the proof that the employer's explanation is false, and any other
> evidence that supports the employer's case and that properly may
> be considered on a motion for judgment as a matter of law.

Id. at 148-49.

Thus, if the employer meets its burden of proffering a nondiscriminatory impetus for its

actions, then trial or summary judgment proceedings will center on whether a jury could infer

discrimination from the following mix of evidence:  (1) the plaintiff's prima facie case; (2) any

evidence presented by the plaintiff to undercut the employer's proffered non-discriminatory

impetus; (3) any other evidence of discrimination available to the plaintiff, including independent

evidence of the employer's discriminatory statements or attitudes; and (4) any contrary evidence

available to the employer, including evidence that the employer has a pattern of taking seriously

its responsibilities of equal opportunity employment.  Aka v. Washington Hosp. Ctr., 156 F.3d

1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. District of Columbia, 298 F.3d

989, 992-93 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the

McDonnell Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff.'"  Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant

has proffered a legitimate nondiscriminatory reason for its action, the question then becomes

whether that proffered reason is a pretext for discrimination.  At this point, the McDonnell

Douglas burden-shifting framework is dissolved.  The sole remaining issue is discrimination vel

non, and "to survive summary judgment the plaintiff must show that a reasonable jury could

conclude from all of the evidence that the adverse employment decision was made for a

discriminatory reason."  Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves,

530 U.S. at 142-43.  Examination of that issue in this setting therefore requires consideration of

all the relevant circumstances in evidence, including the strength of the prima facie case, any

direct evidence of discrimination, any circumstantial evidence that defendant's proffered

explanation is false (which, in conjunction with the prima facie case, may be sufficient to infer

unlawful discrimination), and any properly-considered evidence supporting the employer's case.

Reeves, 530 U.S. at 147-48; see also Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151

(D.C. Cir. 2004); Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at

1290.

### A.  Count I

Plaintiff alleges that employees of the USAO-DC office, all of whom are Caucasian,

proactively procured the disallowance of plaintiff's testimony in cases prosecuted by the USAO-

MD.  The subsequent decision by USAO-MD not to knowingly prosecute cases that would

require plaintiff's testimony was, it is argued, the direct result of this "crusade" against plaintiff.

Plaintiff contends that he has since been hindered in his performance of the "essential duties" of

his job as a special agent, denied "substantial assignments and experience[,] . . . ostracized and

held up to ridicule and scorn by his professional peers and associates.  These consequences have

adversely impacted upon plaintiff's advancement, and caused him great personal and professional

hardships."  Compl. at 6-7.  To support an inference of discrimination, plaintiff claims that he has

been treated more harshly than other, similarly-situated DOJ employees who are not African-American.  Plaintiff also directs the Court to an unrelated case from 1981, Segar v. Smith, Civil Action No. 77-0081 (D.D.C. Feb. 17, 1982) (order), in which the DOJ was found to have violated Title VII through promotion and assignment actions taken with respect to African-American DEA agents.  See id. at 6-7; see also Pl.'s Exh. 10.  According to plaintiff, the final order in that case, entered in 1982, imposes a current, ongoing duty upon the DEA to refrain from taking any action that would discriminate against an African-American agent.  Compl. at 6-7.  Presumably, plaintiff asks this Court to draw an inference that, like the DEA's discrimination in 1982, the actions of the USAO-DC and USAO-MD employees in this case are discriminatory.

Plaintiff is certainly a member of a statutorily-protected group.  The remaining two elements required to make a prima facie case of discrimination, however, are not satisfied.  Most significantly, plaintiff has not suffered any legally cognizable adverse personnel action with respect to his claims in Count I.  See Stella, 248 F.3d at 145.  Neither the communications between the USAO-DC and USAO-MD employees nor the USAO-MD office's decision not to prosecute cases in which plaintiff might be called as a witness constitute adverse employment actions as contemplated by Title VII -- plaintiff was not terminated from employment, he suffered no tangible change in grade or title or salary, and he incurred no substantial diminution in job responsibilities or benefits.  See Tsehaye v. William C. Smith & Co., Civil Action No. 03-1795 at 12-13 (D.D.C. Sep. 26, 2005) (memorandum opinion) ("Tsehaye Mem. Op.") (quoting Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002); Walker v. Washington Metro. Area Transit Auth., 102 F. Supp. 2d 24, 29 (D.D.C. 2000)); see also Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).  Testifying in cases is not, as plaintiff claims, an essential function of the

Special Agent position.  Indeed, plaintiff was promoted to the GS-13 level in early 1998, despite having been barred as a witness in cases prosecuted by both the USAO-MD and USAO-DC offices.  See Def.'s Exh. G; Def's Exh. H; Def.'s Exh. I; EEO ROI Exh. 15 at 4.

Moreover, even if the actions of the USAO-DC and USAO-MD employees cast a shadow upon plaintiff's professional integrity, "[c]riticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action."  Brodetski v. Duffey, 141 F. Supp. 2d 35, 47 (D.D.C. 2001).  Likewise, plaintiff may have suffered embarrassment, but humiliation or loss of professional prestige is insufficient.  See Al-Mahdi v. D.C. Pub. Sch., 2005 WL 3272075 at * 5 (D.D.C. Dec. 2, 2005) (unpublished disposition) (citing Forkkio v. Powell, 306 F.3d 1127, 1130-1131 (D.C. Cir. 2002)).  Simply put, plaintiff has experienced no "materially adverse consequences affecting the terms, conditions, or privileges of employment," Tsehaye Mem. Op. at 12 (quoting Stewart, 275 F.3d at 1134; Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)); see also Ellerth, 524 U.S. at 761, and, accordingly, cannot make a prima facie case of discrimination.

Plaintiff has also failed to offer any evidence from which a reasonable jury could infer that the actions of the USAO-DC and USAO-MD employees were motivated by racial animus.  When there is no direct evidence of racial discrimination,[2] a plaintiff may establish an inference

_____

[2]Plaintiff has stated that he received an anonymous telephone message that referred to him using a racial slur, but he never reported the message to the authorities and erased it before anyone else was able to hear or identify the voice.  See Exh. Q at 83-84, 171-72.  The caller did not leave a name, phone number, or any other identifying criteria, but plaintiff submits that he thinks the caller was a supervisor within the DEA.  Id.  Viewing this evidence in the light most favorable to the plaintiff, and even putting aside any questions as to its credibility or competency, the Court finds that the telephone message is not sufficient evidence of discrimination because it was a single, isolated incident, and the record reveals no link between the phone call and any adverse employment action.  See Nurriddin, 382 F. Supp. 2d at 99; see also Figures v. Bd. of

of discrimination by showing that he was treated more harshly than other, similarly-situated employees who are not members of his statutorily-protected class.  See Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).  For the requisite inference to arise during the summary judgment phase, the Court must, viewing the record in the light most favorable to the plaintiff, find that plaintiff's employment situation was "similar in all relevant regards" to those with whom he seeks to be compared.  Nurriddin v. Goldin, 382 F. Supp. 2d 79, 97 (D.D.C. 2005); see also Holbrook, 196 F.3d at 261.

The record before the Court in the present litigation is entirely barren of such proof. Plaintiff was formally disciplined by the DEA for dereliction of duty, and the USAO-DC and USAO-MD offices entertained real concerns as to whether the misleading statements plaintiff made in connection with an official investigation would taint future prosecutions under Giglio v. United States, 405 U.S. 150 (1972).  See Def.'s Exh. M at 8, 14; Def.'s Exh. P at 12; see also Def.'s Exh. Z; Def.'s Exh. FF; Def.'s Exh. II at 7 (describing plaintiff's statements as "deceptive and misleading").  Hence, plaintiff was required to put forth evidence that a non-African American special agent surrounded by similar professional controversy was treated in a more favorable or lenient fashion.  See Browner, 181 F.3d at 1348.  But he has not done so.  Instead, plaintiff has offered only his conclusory assertions -- in hearsay format -- that Caucasian agents were permitted to testify despite having been more severely reprimanded.  See, e.g., Def.'s Exh.

---

Pub. Utils., 967 F.2d 357, 360-61 (10th Cir. 1992) (holding that evidence of racial comments is not probative of any issue in a Title VII case unless it is linked to relevant personnel actions); cf. Bundy v. Jackson, 641 F.2d 934, 943 n.9 (D.C. Cir. 1981) (finding that isolated racial slurs are insufficient to support a hostile work environment under Title VII).  Title VII is not a "general civility code."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988).

Q at 92, 139; Def.'s Exh. K at 3.[3]  These conclusory assertions are insufficient to preclude summary judgment.[4]

The mere existence of a 1982 court order entered in the Segar case cannot support an inference of discrimination here.  The Court does not agree that, by virtue only of the fact that plaintiff is a member of the same statutorily-protected class as the Segar plaintiffs, past discrimination by the DEA reasonably supports a finding of discrimination on the part of the USAO-MD and USAO-DC.  Not only did Segar arise nearly twenty years ago, but it involved the actions of the DEA.  Count I of plaintiff's action, in contrast, challenges the actions of the two USAOs.  Segar is too far removed in both time and circumstance to supply any inference of discrimination in the present case.

Even if plaintiff had established a prima facie case of discrimination, moreover, summary judgment in favor of the Attorney General would still be appropriate.  Plaintiff simply has not overcome the legitimate, non-discriminatory justification advanced by the defendant.  Although plaintiff did not commit contempt of court or perjury, see Def.'s Exh. II, the fact that he was once

---

[3]For the most part, plaintiff has not detailed the circumstances of those occurrences with sufficient particularity to enable the Court to determine whether any such agents were, in fact, similarly situated to plaintiff.  Plaintiff's conclusory assertions amount to nothing more than the re-hashing of rumors.  With respect to those rumors as to which plaintiff was able to provide some minimally identifying criteria, plaintiff has either pointed to employees who occupy different positions -- for example, an agent employed by the Bureau of Alcohol, Tobacco, & Firearms -- or failed to introduce any objective, non-hearsay evidence to support his contentions.

[4]It is also significant that plaintiff has not even asserted that any of the USAO employees who allegedly wronged him were the same employees who allegedly treated similarly situated, non-African American agents more leniently.  See Nurridin, 382 F. Supp. 2d at 104; Oshiver v. Norton, 2005 WL 3454336 at * 10 (D.D.C. Dec. 16, 2005) (unpublished disposition).  This is particularly noteworthy because, as discussed below, the USAO employees' treatment of plaintiff was based upon their individual judgments regarding their ethical obligations under Giglio and the USAO's attendant implementation policies, as to which reasonable minds may disagree.

charged with such violations and was suspended for dereliction of duty may be enough to trigger the government's Giglio obligation, particularly where an AUSA has personal knowledge of plaintiff's questionable credibility.  See Giglio, 405 U.S. at 154.  Giglio imposes a single, ethical obligation upon the federal government through its prosecuting entity, to be implemented by individual government employees -- and all of the USAO offices have a common interest in seeing that obligation properly satisfied.  See id. at 154.  Whether the Giglio obligation is triggered is a highly fact-intensive and discretionary determination, and it does not depend upon whether the witness's conduct is legally redressable under the law as perjury or contempt of court.  Plaintiff engaged in "deceptive and misleading" conduct in connection with an official investigation and prosecution.  See Def.'s Exh. II at 7.  That is enough conceivably to compromise the integrity of, and perhaps result in the dismissal of, future criminal cases in which plaintiff is a witness.  It matters not that the DEA's attorney disagrees:  the DEA is the investigating, not the prosecuting, authority.  As the prosecuting authority, the determination whether to prosecute a case rests with the USAO, and the USAO need not defer to the DEA's opinion regarding matters of prosecutorial discretion.  The USAO-DC, USAO-MD, and the Executive Office of United States Attorneys all determined that the Giglio obligation was triggered.  See EEO ROI Exh. 13; EEO ROI Exh. 14; Def.'s Exh. D at 112; Def.'s Exh. M at 14, 17; Def.'s Exh. P at 8-12; EEO ROI Exh. S at 8-9.  The Court cannot say that their conclusion was unwarranted.

It is also worth noting that the actions of the USAO-DC employees were not contrary to the Giglio implementation policies of that office.  The implementation policy constitutes the procedural minima with respect to Giglio issues; it does not confer substantive legal rights.  See

Def.'s Exh. Z at 1 n.1.  The implementation policy allows for significant discretion on the part of employees with personal knowledge of potential <u>Giglio</u> information and encourages employees voluntarily to disclose such information.  <u>See</u>, <u>e.g.</u>, <u>id</u>. at 2 (stating that "[t]he Giglio Policy is not intended to replace the ongoing obligation of individual law enforcement agency personnel to advise AUSAs directly of potential impeachment information [regarding] . . . potential witnesses for the United States or [those who] may serve as affiants . . . and are aware, or become aware, of potential impeachment information . . . [and] it is expected that the prosecuting attorney will be able to obtain all potential impeachment information directly from agency witnesses . . . prior to making a formal request).

The implementation policy defines potential <u>Giglio</u> information broadly, to include "[a]ny past or pending criminal charge brought against the employee," <u>id</u>. at 3, even if that charge was an "unsubstantiated allegation[] . . . [that is] not credible . . . or ha[s] resulted in exoneration of the accused agency employee" if the information "reflects upon the truthfulness or bias of the employee . . . where . . . disclosure is otherwise deemed appropriate by the agency" or "where . . . [t]he Requesting Official and the Agency Official agree disclosure is appropriate based upon exceptional circumstances relating to the nature of the case or role of the agency witness," <u>id</u>. at 3-4.  This language arguably encompasses plaintiff's earlier professional indiscretions, and, even if it did not, the language does not foreclose the voluntary release of this information.  The policy merely states when information <u>must</u> or <u>should</u> be disclosed, not when it cannot or should not be disclosed.  Hence, the Court cannot say that the non-discriminatory justification proffered by the defendant based on <u>Giglio</u> concerns is illegitimate.

Having found a legitimate, non-discriminatory justification for the actions of the USAO

employees in this case, the burden now shifts to plaintiff, who must show by a preponderance of

the evidence that this justification is a pretext for discrimination.  See Reeves, 530 U.S. at 143.

Plaintiff has not carried his burden.  Plaintiff's evidence certainly suggests that AUSA O'Malley

may have lacked confidence in plaintiff's trustworthiness, but there is nothing in the record to

support a finding that AUSA O'Malley's actions were motivated by plaintiff's race.  Nor is there

any objective indication that plaintiff's race was a relevant factor in the USAO-MD's decision to

bar plaintiff's testimony in that jurisdiction.  As the Court has previously found, plaintiff's

evidence consists only of conclusory and unsupported assertions.  No reasonably jury could find

that, based upon the record plaintiff has submitted, the legitimate justification for defendant's

behavior is a pretext *for discrimination*.  See Saint Mary's Honor Center v. Hicks, 509 U.S. 502,

515 (1993); Tsehaye Mem. Op. at 19 (citing Murray, 406 F.3d at 713); see also Aka, 156 F.3d at

1291.  Any alleged falsity of the defendant's proffered justification is simply one ingredient in the

overall composite of evidence for the Court to consider.  See Reeves, 530 U.S. at 147-48;

Teneyck, 365 F.3d at 1151; Lathram, 336 F.3d at 1089.  Under the circumstances of this case, it

is insufficient either to demonstrate pretext or, accordingly, to preclude summary judgment.

## B.  Count II

Plaintiff also alleges discrimination by the DEA based upon its decision not to promote

plaintiff to the GS-13 level.[5]  Here, plaintiff has established the first two elements of a prima

facie case -- he is a member of a protected class and has suffered an adverse personnel action.

The denial of a promotion is a tangible, adverse employment action that is legally cognizable

---

[5]Plaintiff's complaint relates to the failure to promote him to GS-13 in early 1997, given
that he received such a promotion in early 1998.

under Title VII, see Ellerth, 524 U.S. at 761, because it carries with it a stagnancy in benefits, salary, title, grade, job responsibilities, and/or lateral opportunities. Nevertheless, the record does not support an inference of discrimination because it is wholly devoid of any direct proof of discrimination and also lacks any proof (outside of plaintiff's own conclusory assertions, see Def.'s Exh. A at 87, 89-91) that similarly situated employees who were not African-American were granted promotions to the GS-13 level at that time. Hence, plaintiff has not established a prima facie case of discrimination with respect to Count II.

Beyond plaintiff's failure to carry his prima facie case burden, he also has not shown that the legitimate, non-discriminatory reasons for his non-promotion proffered by the defendant are a pretext for discrimination. The Court has already concluded that any Giglio concerns on the part of USAO employees were legitimate and non-discriminatory. Moreover, the DEA has proffered additional non-discriminatory justifications for its decision not to promote plaintiff. Several supervisors did not feel that plaintiff exhibited, at that time, the depth of experience and level of performance that is characteristic of a GS-13 level agent. See Def.'s Exh. B at 25; Def.'s Exh. C at 24-25; Def.'s Exh. D at 83, 108. Although plaintiff was confined by certain limitations on his duties as a result of his professional indiscretions, it was recognized that he nonetheless could have produced the quality and amount of work that is expected of a GS-12 agent. See Def.'s Exh. L at 1; see also EEO ROI Exh. 19 at 3-5. Specifically, supervisors noted that plaintiff spent too much time on personal tasks, did not initiate a sufficient number of cases or adequately develop informants, failed adequately to analyze and/or seize evidence, was frequently tardy and did not respect attendance protocol, and did not properly prepare comprehensive reports. See Def.'s Exh. B at 25; Def.'s Exh. D at 83, 108; see also Def.'s Exh. L at 1; see also EEO ROI Exh. 1; EEO ROI

Exh. 13 at 6-9; EEO ROI Exh. 14 at 2-4.  These are legitimate justifications for the DEA's

decision.  See Jones v. Greenspan, -- F. Supp. 2d --, 2005 WL 3370438 at *6 (D.D.C. Dec. 13

2005) (finding that evaluations of "commendable" rather than "outstanding" constituted a

legitimate justification for the denial of a promotion because plaintiff's work sometimes required

additional efforts or was incomplete).  Plaintiff failed to obtain the requisite recommendation of

his superior because that superior shared the perspective of other supervisors who thought that

plaintiff was not yet deserving of a promotion.  See EEO ROI Exh. 1 at 6; EEO ROI Exh. 15 at

2-3.  The Court's role is not to act as a super-personnel department that second-guesses an

employer's legitimate business decision.  Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183

(D.C. Cir. 1996); see also Nurridin, 382 F. Supp. 2d at 101.

        Nor does plaintiff's evidence establish a pretext for discrimination.  Indeed, once plaintiff

gained the requisite depth of experience and exhibited the requisite level of capability, he was

promoted to the GS-13 level.  See Def.'s Exh. G; Def's Exh. H; Def.'s Exh. I; EEO ROI Exh. 15

at 4.  Soon after, plaintiff also received a step increase within his grade.  See Def.'s Exh. A at 61.

These facts tend to undercut any assertion that the initial denial of a promotion was

discriminatory.  See Nurridin, 382 F. Supp. 2d at 104 n.7.  Plaintiff's own subjective assessment

of his credentials and performance at the time that the promotion was denied are not sufficient to

establish pretext.  See Tsehaye Mem. Op. at 19 (citing Keeley v. Small, -- F. Supp. --, 2005 WL

2304162 at *16 (D.D.C. 2005); Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7

(D.D.C. 2000), aff'd, Waterhouse, 298 F.3d at 992-93)); see also Oshiver, 2005 Wl 3454336 at

*13.  Nor does it suffice that a single supervisor thought that plaintiff deserved a promotion, or

that plaintiff received outstanding performance evaluations in previous years.  See Nurridin, 382

F. Supp. 2d at 101.  The Court's task is to consider the entire body of evidence, including the strength of the plaintiff's prima facie case.  Reeves, 530 U.S. at 147-48; Teneyck, 365 F.3d at 1151; Lathram, 336 F.3d at 1089.  Even if plaintiff had carried his prima facie case burden, that prima facie case would not be very strong.  Finally, although the Segar order may arguably be more relevant here (because Count II concerns the actions of the DEA rather than the USAO), it still does not suffice to support an inference of discrimination.  The end result is that a case so distant in time and factual circumstances cannot control the outcome of the present case, particularly because there are legitimate, plaintiff-specific justifications for the promotion decision challenged here.  In sum, plaintiff has provided nothing to support the conclusion that race played any part in the DEA's decision to keep plaintiff at the GS-12 level.

Plaintiff also alleges retaliation in connection with his denial of promotion.  For a retaliation claim, plaintiff must make a prima facie case by showing that:  (1) he engaged in a protected activity; (2) he suffered a subsequent adverse personnel action; and (3) there is a causal nexus between the protected activity and the adverse personnel action.  Brody, 199 F.3d at 452; Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (1984).  Once a prima facie case is made, the McDonnell Douglas burden-shifting framework applies.  See Tsehaye Mem. Op. at 20.

Plaintiff has satisfied the three prima facie elements for retaliation.  To begin with, plaintiff's filing of a complaint with the EEO on January 3, 1997 qualifies as a protected activity, see Forkkio, 306 F.3d at 1131-32; Jones v. Washington Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000); McKenna, 729 F.2d at 791, and the denial of a promotion in February of

1997 certainly constitutes an adverse personnel action, see Ellerth, 524 U.S. at 761.[6]  The causal

nexus inquiry often focuses on the temporal proximity between the protected activity and the

adverse personnel action.  See Clark Cty. School Dist. v. Bruden, 532 U.S. 268, 273 (2001); see

also Childs-Pierce v. Utility Workers Union of Am., -- F. Supp. 2d --, 2005 WL 1983577 at *13

(D.D.C. 2005).  If the two are "very close" in time, the causal nexus element is satisfied.  Clark

Cty., 532 U.S. at 273-74; see Nurriddin, 382 F. Supp. 2d at 105.  Although courts diverge on

what qualifies as "very close," compare, e.g., Castle v. Bentsen, 867 F. Supp. 1, 3 (D.D.C. 1994)

(holding that a gap of three to five months may support a finding of causation), with Kipp v. Mo.

Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (holding that a two-month

interval is too attenuated to support a finding of causation), and Baker v. Potter, 294 F. Supp. 2d

33, 41 (D.D.C. 2003) (same), this Court has held that time periods similar to the one at issue in

this case suffice, see Childs-Pierce, 2005 WL 1983577 at *13 (holding that interval of nine

weeks was sufficient to support a finding of causation, in part due to the severity of the adverse

personnel action).

　　　The Court is comfortable here in concluding that a gap of approximately one month

between the filing of plaintiff's EEO complaint and the subsequent denial of promotion is

sufficient to support an inference that the two events are causally linked.  See Tsehaye Mem. Op.

at 22 (finding that lapse of approximately twenty-six days supported a finding of causation).  But

------

　　　　　[6]The reassignment of plaintiff from the Baltimore DEA office to the Northern Virginia
DEA office does not constitute an adverse employment action because it was not coupled with a
significant change in job responsibilities, see Ellerth, 524 U.S. at 761 (acknowledging
"reassignment with substantially different responsibilities" as sufficient to constitute an adverse
personnel action), and, more importantly, because the reassignment was voluntary, see Def.'s
Exh. Q at 123.

this is as far as plaintiff may go under the law.  As the Court has already discussed, plaintiff has

not shown that the defendant's proffered legitimate, non-discriminatory justifications for denying

the promotion constitute a pretext for discrimination.  Hence, summary judgment in favor of the

Attorney General is proper with respect to the retaliation clam in Count II as well.

### C.  Count III

Finally, plaintiff alleges discrimination based upon the unsolicited communications made

by employees of the USAO-DC office to AUSA Knight in the USAO-EDVA office, which

disclosed plaintiff's prior professional indiscretions.  For the same reasons discussed in

connection with Count I, plaintiff cannot establish that he suffered an adverse employment action

or that the record supports an inference of discrimination with respect to this claim.  In fact,

plaintiff's case is even weaker with respect to Count III because the USAO-EDVA office never

decided to avoid prosecuting cases in which plaintiff was likely to testify.  Hence, plaintiff has

not made a prima facie case.  But again, even if he had, for the reasons discussed above

concerning Count I, plaintiff would ultimately be unable to overcome the defendant's proffered

legitimate, non-discriminatory justifications.

Count III also makes a retaliation claim based upon the formal EEO complaints filed by

plaintiff in April and May of 1997.  Here, plaintiff has only satisfied the first element of a prima

facie case for retaliation -- the complaints do constitute a protected activity.  But plaintiff has

shown no adverse personnel action with respect to Count III, and, even if he had, it is anything

but clear that the amount of time that passed between the filing of those complaints and the

contact initiated by the USAO-DC employees would be sufficient to support an inference of

causation.  The USAO-DC employees contacted AUSA Knight in late 1997 or early 1998; hence,

more than two or three months -- up to eight months, perhaps -- elapsed from the time that the complaints were filed.  The Supreme Court has cited with approval several cases that have refused to find a causal nexus based upon a lapse of three to four months.  See Clark Cty., 532 U.S. at 273-74.  In the absence of a particularly severe adverse employment action, see Childs-Pierce, 2005 WL1983577 at *13 (allowing a lapse of nine weeks to support a finding of causation in part due to the severity of the adverse employment action suffered by the plaintiff), the Court is not inclined to find that there is a causal nexus based solely upon a temporal proximity that arguably does not satisfy the "very close" standard, see Nurriddin, 382 F. Supp. 2d at 105.

In any event, plaintiff's claim would ultimately not survive because, for the reasons discussed above, he is unable to overcome the defendant's legitimate, non-discriminatory justification for the actions of the USAO-DC employees.  Hence, summary judgment in favor of the Attorney General is also warranted as to both the discrimination and retaliation claims in Count III.

### CONCLUSION

For the reasons discussed in this Memorandum Opinion, the Court will grant defendant's motion and enter judgment dismissing plaintiff's action in its entirety.  A separate order will be posted on this date.

    /s/      John D. Bates
         JOHN D. BATES
    United States District Judge

Dated:   December 27, 2005

Copies to:

William George Jepsen, Jr.
1711 Stratten Road
Crofton, MD 21114
(301) 261-3982
Fax: (410) 451-4706
Email: jepsen1033@earthlink.net
Rick A. White
77 West Washington Street
Suite 707
Chicago, IL 60602
(312) 236-0950
Fax: (312) 236-4657
Email: raw1026@aol.com

Reuben B. Collins, II
COLLINS & TALLEY, LLC
P.O. Box 1857
La Plata, MD 20646
(301) 934-4366
Email: rburtonc@yahoo.com
        *Counsel for plaintiff*

Diane M. Sullivan
UNITED STATES ATTORNEY'S OFFICE
555 4th Street, NW
Civil Division
Washington, DC 20530
(202) 514-7205
Fax: (202) 514-8780
Email: diane.sullivan@usdoj.gov
Stacy M. Ludwig
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Suite 4108
Washington, DC 20530
(202) 514-7147
Fax: 202-514-8780
        *Counsel for defendant*